Pseg Nuclear and Public Service, Electrical and Gas v. United States 055162, Mr. Silberg. May it please the Court, on behalf of Plaintiff's Appellants, Public Service, Electric and Gas Company and Pseg Nuclear, which I'll refer to as PSEG, we're here today to present a fairly simple, straightforward, narrow jurisdictional issue. That is whether the Tucker Act provides jurisdiction for the Court of Federal Claims to hear a claim for money damages against the government for breach of the standard contract, which these plaintiffs and all utilities have entered into with the Department of Energy, or alternatively, did Congress withdraw that jurisdiction when it enacted Section 119 of the Nuclear Waste Policy Act? Well, let's look at 119. The United States Courts of Appeals shall have jurisdiction. That means not the Court of Federal Claims. For review of any action of the Secretary, alleging the failure of the Secretary to make any decision or take any action, wasn't there a failure to take some action, which is the acceptance and storage of the spent nuclear fuel? We believe that the breach of contract that took place was not a failure to act. We would distinguish between actions and failures to act, which are, we believe, APA kind of activities with a breach of contract. How do we read that from the statute? We read it because, first of all, there's no indication that Congress intended to do Section 119. Doesn't Congress indicate what it wants to do by writing a statute? It did. And there's no indication that it was tinkering with Tucker Act jurisdiction. And indeed, the District of Columbia, D.C. Circuit, this Court, the Eleventh Circuit, and many of the Courts of Federal Claims have all found that the breach of contract claims for money damages are, in fact, different than and not included within the scope of Section 119. This says, take any action under this part. What does under this part refer to? When this section was written, as you know, if you've read the... Because that limits the take the action. So the take action we're looking for is under this part. That's correct. What is that? In the General Electric Uranium Management Company case in the D.C. Circuit, that Court and all subsequent Courts have found that this part includes, by cross-reference if no other reason, certain activities that take place under Section, under Part 3, Title 3 of the Act, Section 302, which is the provision we're talking about. Section 111 of the Nuclear Waste Policy Act provides as one of the purposes of the Act the creation of the Nuclear Waste Fund. It provides, more importantly in our case, for schedules for the nuclear waste program. And the D.C. Circuit, in the Giamco case, followed by the West Gals Electric case the following year, and all subsequent cases have read Section 119 as including appeals of actions or failures to act taken under Section 302 of the Nuclear Waste Policy Act, which is not in Part 1, but rather in Part 3. But because of the cross-reference back to the purposes section, all these Courts, including Federal Circuit, I believe, have found that that is the appropriate jurisdictional source for activities under Part 3. The issue here, however, is whether a breach of contract is an action taken under those sections or a failure of Act. As you recall, Section 302 requires DOE to enter into contracts. It doesn't deal with the issue of breach of contracts. There's nothing in the Act, Nuclear Waste Policy Act, which deals with breach of contracts. There's nothing in the Act which deals with money damages. The Tucker Act and the Little Tucker Act, which also has been applied in these cases, specifically deals with claims for money damages, and that's what we're dealing with here. What about the City of Burbank case? The City of Burbank case really set up two standards to determine whether a contract could be, a breach of contract could be brought in the Court of Federal Claims. I believe that neither of those two standards apply here. The easiest one is administrative record. There is no administrative record that sets forth what the damages were for the breach of contract, which this Court has found as applied to all utilities. There is no administrative record. If you were to apply the City of Burbank to this case, you would be asking a regional court of appeals or the D.C. Circuit to make fact findings, to have hearings to figure out what were the damages, how were they assessed. How did all the various cost elements fit in? There is no administrative record here that would fit under that rubric. The second standard in City of Burbank is whether it was a statutorily mandated term. In our case, the statutorily mandated term is a provision to put into the contract the deadline. It is not the deadline. The breach of the deadline is not, as this Court and the D.C. Circuit, is not something which is required. It's the inclusion of a term in the contract. So I believe, read properly, City of Burbank, neither of the tests established in those cases are met in our situation. In the 20 years that I've been litigating DeGloria's policy, cases and standard contract cases, this is the first decision that I'm aware of that has ever suggested that Section 119 somehow deprives the Court of Federal Claims of jurisdiction. Both the government and we agree that the Court of Federal Claims has jurisdiction. We believe that the D.C. Circuit has found in at least three cases, including the Wisconsin electric case and the two northern states power cases, that the Court of Federal Claims jurisdiction applies. And as to the NSP cases, these plaintiffs were parties in those cases, as was the government. And we believe that that establishes race judicata collateral estoppel for this doctrine in this case. And we believe that the Federal Circuit's decisions in NSP and Manianke and Radler have also established that same principle. Now, all of the Court of Federal Claims cases, except for this one, and we've cited many of them in our brief on page 21, establish the proposition that Tucker Act jurisdiction is proper here. As I mentioned, there's no indication that Congress intended any other result. We think the major underpinning in the January 31, 2005 decision, there are two. We discussed one, which is the City of Burbank case, and the other is the treatment of the standard contract as a regulation, which we think has already been decided by this case. It is not a regulation. It is a contract. It has all the indicia of a contract, and this court, in particular, has treated it as such. I'd like to reserve the rest of my time for it. We will do that, Mr. Filburn. Mr. Lester. Do you agree on the jurisdictional matter? This is a strange appeal for me, Your Honor, because- So you're about to sit down. We're seeking a reversal of the trial court's opinion, too. However, I do want to just talk about the jurisdictionals just a bit, because they are actually incredibly important to the 59 cases that are pending before the court of federal claims. Yeah, but we're not in the business of giving advisory opinions here. That's true. They may be important. The issue may eventually reach its way up here, but how and why in this context would       I think that's a good point. I think that's a good point. I think that's a good point. I think that's a good point.   One of the jurisdictions is the court possesses jurisdiction to consider this particular case. The parties couldn't voluntarily settle this matter and send it back down because the parties cannot create jurisdiction in the court of federal claims. Given the decision that is pending, the parties are not in a position to simply resolve this amongst themselves and send it back down. The jurisdictional issue in this particular case is the one I want to talk about. There are two things that the court needs to look at to resolve Judge Seipold's order finding that, in fact, all these cases should go to the D.C. Circuit. The first one is one that Mr. Silkbrook discussed and which has been long established at least through the D.C. Circuit, Eleventh Circuit, and Sixth Circuit opinions, and that's the General Electric case. That is that Section 119, in fact, despite some ambiguous language, does, in fact, cover matters arising under Section 302. There is language in, although Judge Rader referenced the language under this subtitle or under this part, depending on if you look at the codified part of the original statute, the D.C. Circuit has looked at Section 111, recognized that it, in fact, identifies the purpose of the statute, and those purposes include some matters that then are discussed in Section 302. Section 302, in fact, talks about the Secretary and the performance of his functions under this Act as a whole, not simply the Title III of the Act, but in terms of implementing Title I, subtitle A, which is where the judicial review provision is. This has been a longstanding interpretation in the D.C. Circuit that Section 119 covers one, one, I'm sorry, Section 302, so we would ask the court first to agree with that part of Judge Seipold's opinion, where she finds that that, in fact, is a proper jurisdictional analysis. You want us to tell the District of Columbia Circuit what its jurisdiction is, is that what you're saying? No, Your Honor. We want the court- Haven't they decided these issues? They have. However- Then why are we telling them what to do with their jurisdiction? Your Honor, what the trial court did was properly look at its own jurisdiction, since the D.C. Circuit has a jurisdictional ruling binding upon the trial court, the trial court has to independently analyze that itself. However, we agree that the D.C. Circuit was right and that the trial court properly found that its jurisdiction could be implicated by Section 119, depending upon what allegations are made in a complaint. However, in this particular case, we further believe that assuming Title 119 does cover some Section 302 matters, in this particular case, the contract claims that arise here properly belong in the Court of Federal Claims at the trial court erred in finding that under City of Burbank, the D.C. Circuit should actually consider these contract claims. In other words, whether or not 119 implicates certain matters under 302, whether or not that's right or wrong, is not relevant or necessary for us to decide in order to just reverse the district court on this jurisdictional question. That is true, Your Honor. The court could avoid the question of whether 119 covers 302 by finding that, even assuming that it does without deciding it, that Section 119, as written, would not cover the type of contract claim that is at issue here. We would suggest that in various cases, such as Rumsfeld v. Applied Companies from 2003, this court does, at times, even if it finds it unnecessary to decide a particular issue that is highly related to the issue it's deciding, it sometimes will provide guidance to the parties so that, on remand, it will provide a clearer benchmark for the parties to deal with the cases it develops. Is that how you would characterize what this court did in Maine-Yankee? In Maine-Yankee? No. Didn't this court in Maine-Yankee already reach the issue that you would suggest that or invite us to reach in terms of the statute and the unavoidable delays clause? Your Honor, the only issue that arose, that was in play in the Maine-Yankee and Northern Now, I do want to comment on something in the reply brief that talks about Northern States referring to the unavoidable delays clause. That decision has, unfortunately, a very significant typographical error. The issues in play in both Maine-Yankee and Northern States was the avoidable delays provision. Maine-Yankee only talks about whether the avoidable delays provision required administrative exhaustion. Then, in Northern States, the court referred back to its decision in Maine-Yankee and said that this issue has already been decided there, but unfortunately, called it the unavoidable delays clause. It was a typographical error. The reach of the unavoidable delays provision was not discussed in those two cases, and the reason was that the government is, right now, under a writ of mandamus from the D.C. Circuit in Northern States. The D.C. Circuit— But isn't there a clear language in the Maine-Yankee opinion that really resolves this or in which the court, our court, opines about the statutory requirement? You're right. It talks about we're dealing with avoidable, but isn't that the other side of the coin in terms of unavoidable delay? Well, the contract provisions themselves are each individual. It's not one provision. Well, they are—the unavoidable is Part A, and then avoidable is in Article 9B. However, the language is slightly different in each clause. However, in this particular appeal, we're not asking the court here to opine upon whether the unavoidable delays provision is correct or not. In our brief, what we tried to do was, instead of providing a piecemeal presentation of some of the jurisdictional issues, we tried to be fairly complete in terms of what all the jurisdictional decisions have been to date, with the hope that we would provide the court with, rather than simply a part of the story, a fuller understanding of where the different jurisdictional decisions have fallen and how they've differed very slightly from case to case until, more recently, the Boston-Edison decision from the trial court, which seems to disagree with the original General Electric decision. However— What do you mean, it seems to disagree? Does it have its states in passing? I mean, it follows what the D.C. Circuit said and did, correct? Well, in Boston-Edison, what the trial court held was that, actually, Section 119 does not encompass matters under 302, although it then said it would not question the D.C. Circuit's decision with regard to the D.C. Circuit's jurisdiction over fee matters. However, the rationale of it would eliminate Section 302 jurisdiction from Section 119. However, getting back to the City of Burbank issue, we agree with the appellant that the trial court erred in finding that the City of Burbank supports— This is certainly one of the more agreeable cases that we've had. Your Honor, I like to be agreeable when I can. We agree about the—in City of Burbank, administrative rulemaking was—although we have a contract here that was created through administrative rulemaking, however, in City of Burbank, that was a statutory requirement. Here, it was a permissive one. The Department of Energy elected to create its contract terms through administrative rulemaking, but it was not statutorily required to as they were in City of Burbank. And with regard to the statutorily mandated terms, which was the second part of the City of Burbank test in finding that certain contract matters would go back to the regional circuit, here we have contract provisions that were not statutorily mandated to the extent that there are provisions that are being challenged, which they are, which were statutorily mandated. Those terms were created in 1983, and any statute of limitations for reviewing those in the regional circuits has expired, so that the provisions that the appellant is challenging here are, in fact, those that the trial court should and can review as written. For these reasons, Your Honor, we would request that the court reverse the jurisdictional finding by the trial court. Thank you, Mr. Lester. Mr. Silberg has a little time left. Just a few comments in rebuttal. I'm glad to see the government and plaintiffs here are in violent agreement on the key issue. The rest of the discussion seems to be, as Your Honor indicated, a request for an advisory opinion. I think it's a pretextual opportunity for the government to once again take a run at D.C. Circuit. When the Northern States Power case was issued, the decision was issued in 1997, the government filed for re-hearing because it didn't like the outcome of the decision. It lost on re-hearing. The government then asked for the Supreme Court to review the case. The Supreme Court declined to do so. And that decision has been an inherent part of jurisprudence on nuclear waste policy accident contract cases since that time. Now the government has tried again to take another run at this issue. It's reading in typographical errors, which it didn't see for six years. It's re-raising the same issue. And it's collaterally attacking, we believe, the D.C. Circuit's jurisdiction to enforce its own mandate. And frankly, we believe it's a red herring. It's simply not necessary for this court to reach those issues. And the issue, we believe, was decided and it was raised judicata. It will come up again to the extent that the government may argue that the decision in Wisconsin Electric doesn't involve these plaintiffs. Wisconsin Electric is another one of the utilities that has one of the 59 cases pending before the Court of Federal Banks. And it will come up again if the government should succeed. The Boston Edison case, I believe the government's reading of that is an overreaching. I think when government suggests that Boston Edison seems to disagree with Gianco, the reason that government indicated that is because it's not very clear. And I don't believe when read fully that the Boston Edison case, in fact, is in disagreement  with Gianco. Finally, with respect to whether we're challenging statutory terms or contract terms, this case is not a challenge to the statute. This case is not a challenge to a contract term. This case is a breach of contract, a simple, straightforward, unfortunately very expensive breach of contract case. And we would ask that it continue to be treated as such before the Court of Federal Claims. Your argument is spent. Yes. The case will be taken under advisement.